In re George A. HENDERSON, Debtor.

George A. HENDERSON, Plaintiff,

v.

Susan K. HENDERSON, Defendant.

Bankruptcy No. 95–32696.
Adversary No. 95–3315.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Aug. 13, 1996.

Nancy Schramski, Lima, OH, for Plaintiff.

Randy Reeves, Lima, OH, for Defendant.

## OPINION AND ORDER DENYING COMPLAINT TO DISCHARGE DEBT AND EXCEPTING DEBTS FROM DISCHARGE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court on Debtor/plaintiff George A. Henderson's (the "Debtor") complaint which seeks to discharge his obligation to make certain weekly payments (the "Weekly Payments") to his former wife Susan K. Henderson, now known as Susan Spencer, ("SKH") arising from a separation agreement (the "Agreement") incorporated into a divorce decree (the "Decree"). The Debtor also seeks to discharge his obligation to pay and hold SKH harmless as to credit card debts to Discover, in the amount of $2,739.00, and JC Penney·Visa, in the amount of $1,765.00 (the "Credit Cards"). Further, the Debtor seeks to discharge his obligation to make post-Decree payments for "repairs, maintenance, upkeep, mortgage payments, taxes and insurance" for the former marital residence (the "Home"). SKH has filed an answer, arguing that the Debtor's obligations under the Agreement should be excepted from discharge under either § 523(a)(5) or § 523(a)(15). After considering the evidence adduced at trial, the Court finds that the Debtor's complaint is not well taken and should be denied. The Court con-

cludes that the Debtor's obligation to make the Weekly Payments to SKH should be excepted from discharge under 11 U.S.C. § 523(a)(5). Moreover, the Court concludes that the Debtor's obligation to repay the Credit Cards should be excepted from discharge under § 523(a)(15). Lastly, the Court concludes that the Debtor's obligation for "repairs, maintenance, upkeep, mortgage payments, taxes and insurance" on the Home should be excepted from discharge under § 523(a)(15).

### FACTS

The Debtor filed a petition under chapter 7 of title 11 on October 20, 1995 (the "Petition Date").

The Debtor and SKH married on June 30, 1973 and obtained a divorce on March 2, 1995. They had one dependent on the date of the Decree, George, Jr., who was born on September 3, 1979.

**The Agreement**

The Agreement required the Debtor to pay:

> as and for spousal support the sum of $6,000.00 payable in weekly installments of $57.50.... This spousal support shall not be modifiable by either party and shall not be taxable income to the Wife nor a tax deduction to the Husband.

Agreement, at p. 2, para. 3, Article IV. The Debtor has paid approximately $3,000.00 of this obligation.

The Agreement further stated that, except as otherwise provided, the Debtor was required to "assume and save [SKH] harmless on all marital debts".

The Agreement awarded the Debtor the Home until the Home could be sold. The Home, which the Debtor values at $40,000.00, is subject to a first mortgage in favor of Fifth Third Bank in the amount of $23,000.00 and a second mortgage in favor of Bank One, Lima in the amount of $4,000.00. The Agreement created an obligation in the Debtor for post-Decree "repairs, maintenance, upkeep, mortgage payments, taxes and insurance" on the Home.

The Debtor vacated the Home subsequent to the Decree in July of 1995 and presently resides at 404 Lewis Boulevard in Lima, Ohio.

**The Parties' Financial Positions**

The Debtor has been employed as a mechanic with Roeder Cartage, Inc. ("RCI") since 1980. His yearly earnings approximated $37,000.00 at the time of the Decree. While an elbow injury suffered subsequent to the Petition Date prevented him from working for three and one-half months, he has since returned to work at RCI.

SKH testified that she was unemployed on the date of the Decree and had no employment prospects at that time. SKH further testified that, at the time of the Decree, she had only two to three weeks of unemployment benefits remaining. According to SKH, the Debtor's spousal support payments provided her with substantially all of her income during the five months following the divorce.

SKH testified that she has worked as a secretary with the Allen Metropolitan Housing Authority since September 3, 1995 at a rate of $7.50 per hour. She remarried in December, 1995.

The Debtor's present monthly income and expenses include the following:

| Description | | |
|---|---|---|
| Net Pay | | $1,992.00 |
| Rent | $ 200.00 | |
| Electricity | $ 45.00 | |
| Gas | $ 40.00 | |
| Child Support | $ 280.00 | |
| Spousal Support | $ 309.00 | |
| Water and Sewer | $ 69.00 | |
| Telephone | $ 25.00 | |
| Trash | $ 9.00 | |
| Cable Television | $ 28.00 | |
| Food | $ 258.00 | |
| Clothing | $ 50.00 | |
| Laundry and Dry Cleaning | $ 40.00 | |
| Medical and Dental | $ 25.00 | |
| Transportation | $ 80.00 | |
| Recreation | $ 50.00 | |
| Other sundries | $ 20.00 | |
| Total Monthly Expenses | | $1,528.00 |
| Excess Monthly Income | | $ 464.00 |

Although the Debtor's scheduled expenses listed monthly payments for the first and second mortgages on the Home, he testified that he has not made such mortgage payments subsequent to the Petition Date.

Likewise, the Debtor's budgeted monthly payment on a debt to City Loan is improperly scheduled as an expense because such debt has been discharged. Moreover, in light of the Debtor's testimony that he has paid-off his automobile, the Debtor's budgeted monthly payment of $50.00 for this item does not represent a current expense.

The Court also notes that the Debtor's $28.00 budgeted monthly expense for cable television is not necessary for the maintenance or support of the Debtor or his dependent.

Furthermore, the Debtor's $280.00 monthly child support obligation will cease in the near future when George, Jr. reaches the age of majority.

SKH testified that she paid $2,410.97 on the mortgages subsequent to the Decree with funds borrowed from her current husband.

### DISCUSSION
### BURDEN OF PROOF

■ SKH bears the burden of establishing that the Debtor's debt to SKH should be excepted from discharge under § 523(a)(5) by the preponderance of the evidence. *Young v. Young (In re Young)*, 35 F.3d 499, 501 (10th Cir.1994) (citation omitted); *see also Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir.1993) (nondebtor bears burden of proof under § 523(a)(5)) (citation omitted).

■ In the context of § 523(a)(15), SKH must establish that the debts owed to her were incurred by the debtor in the course of a divorce or separation. *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 200 (Bankr. S.D.Ohio 1995). Although a split of authority exists, *See Morris v. Morris (In re Morris)*, 197 B.R. 236, 242–43 (Bankr.N.D.W.Va.1996), this Court agrees with the majority view that the Debtor bears the burden of establishing either an inability to pay under § 523(a)(15)(A) or that a discharge would result in a benefit to the Debtor that would outweigh the detriment to SKH under § 523(a)(15)(B). *Carroll*, 187 B.R. at 200; *see also In re Smither*, 194 B.R. 102, 106–07 (Bankr.W.D.Ky.1996); *Samayoa v. Jodoin*

*(In re Jodoin)*, 196 B.R. 845, 853 (Bankr. E.D.Cal.1996). Significantly, in the context of § 523(a)(8) which mandates that a student loan be excepted from discharge "unless" such a loan represents an "undue hardship" to the debtor and the debtor's dependents, courts have held that the Debtor bears the burden of proof on the issue of "undue hardship". *Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 301 (3rd Cir.1995) (citations omitted), *rehearing denied*, (3rd Cir.1996), *cert. denied*, —— U.S. ——, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996); *Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 393–94 (E.D.Mich.1993). The Court is unpersuaded that analogous "unless" language contained in § 523(a)(15) should be interpreted as placing the burden of proof under § 523(a)(15)(A) or § 523(a)(15)(B) on the creditor. *Jodoin*, 196 B.R. at 853.

## WHETHER THE WEEKLY PAYMENTS ARE NONDISCHARGEABLE UNDER 5523(a)(5)

■ The Court finds that the Weekly Payments represent a nondischargeable support obligation.

### Applicable Statute

Section 523(a) provides, in pertinent part, that:

[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

... (5) to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

... (B) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C. § 523(a).

The Court finds that the parties intended to create a support obligation at the time of the divorce. The Court's "initial inquiry must be to ascertain whether the state court or the parties to the divorce intended to create an obligation to provide support". *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109 (6th Cir.1983); *see also Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2nd Cir.1993) (stating that "[a]ll evidence, direct or circumstantial, which tends to illuminate the parties' subjective intent is relevant") (citations omitted). The Court's determination of the parties' intent at the time of the Dissolution "does not turn on one party's post hoc explanation as to his or her state of mind at the time of the agreement, even if uncontradicted". *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 723 (10th Cir. 1993); *Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir.1987) (stating that "[w]hile the intention of the parties is the ultimate question, even the uncontradicted testimony of one of the spouses is not decisive") (footnote omitted). Instead, "the critical inquiry is the shared intent of the parties at the time the obligation arose." *Sampson*, 997 F.2d at 723 (citing *Tilley v. Jessee*, 789 F.2d 1074, 1078 (4th Cir.1986)).

The Agreement's characterization of the Debtor's obligation as support provides persuasive evidence that the parties intended to create a support obligation. *Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1406 (9th Cir.1996); *Hughes v. Hughes (In re Hughes)*, 164 B.R. 923, 927–28 (E.D.Va.1994).

Additionally, the Debtor acknowledged that he intended the Weekly Payments to provide SKH with funds for health insurance, a necessity. *Cf. Northcutt v. Northcutt (In re Northcutt)*, 158 B.R. 658, 663 (Bankr. N.D.Ohio 1993) (concluding that debtor's obligation to pay health insurance premiums for wife and children was in the nature of support); *Stone v. Stone (In re Stone)*, 79 B.R. 633, 640 (Bankr.D.Md.1987) (stating that requirement that debtor provide health insurance for wife was "clearly related to her support and well being"), *appeal dismissed*, 98 B.R. 243 (D.Md.1988).

Moreover, the duration of the marriage as well as the disparity in the parties' earnings at the time of the divorce compel the conclu-

sion that the Weekly Payments represented a support obligation. *See In re Sternberg*, 85 F.3d at 1405–06 (held that husband's obligation to make monthly payments under marital settlement agreement was nondischargeable where wife was unemployed at time of agreement, wife had not been employed in ten years, wife's only asset was residence, debtor/husband had $100,000.00 salary and several million dollars in assets). The Debtor earned a yearly income of approximately $37,000.00 on the date of the Decree, while SKH was unemployed.

Although the fact that the Weekly Payments were nonmodifiable and not tax-deductible to the Debtor lends some support to the Debtor's argument that such payments were in the nature of a property settlement, the Court finds that such payments represented nondischargeable support. *See Sternberg*, 85 F.3d at 1400 (held that debt represented support notwithstanding the fact that payments were not taxable to wife and were to survive her remarriage).

## WHETHER THE DEBTOR'S OBLIGATION FOR REPAIRS, MAINTENANCE, UPKEEP, MORTGAGE PAYMENTS, TAXES AND INSURANCE ON THE FORMER MARITAL HOME IS NONDISCHARGEABLE UNDER § 523(a)(15)

### Applicable Statute

■ Section 523(a)(15) excepts from discharge a debt which is:

not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation,

preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

11 U.S.C. § 523(a)(15).

■ The bankruptcy court should review the Debtor's financial condition at the time of trial in making its determination under § 523(a)(15). *Morris*, 197 B.R. at 244 (citation omitted); *Johnston v. Henson (In re Henson)*, 197 B.R. 299 (Bankr.E.D.Ark.1996); *Smither*, 194 B.R. at 107–08. The Court's inquiry "is not controlled by a mere 'snapshot' of the debtor's financial strength as of a single moment in time. Rather, this inquiry must allow a court to consider the debtor's prospective earning ability." *Smither*, 194 B.R. at 107.

Turning to the adversary proceeding at hand, the Court concludes that the Debtor's obligation to provide for post-Decree "repairs, maintenance, upkeep, mortgage payments, taxes and insurance" on the former residence represents a nondischargeable property settlement under § 523(a)(15). *See Carroll*, 187 B.R. at 197. First, the Debtor has the ability to pay this obligation from future income which is not necessary to be expended for the maintenance or support of the Debtor and his dependent. *See Carroll*, 187 B.R. at 201 (concluding that debtor had ability to repay mortgage payments required by divorce decree where he had income of at least $400.00 per month in excess of necessary expenses); *Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312 (Bankr.W.D.Ark.1996) (concluding that debtor had ability to repay property settlement debt, notwithstanding debtor's prior financial setbacks from illness, where debtor had been capable of making required payments prior to illness and debtor had discharged most of her debts in bankruptcy). Second, discharging Debtor's obligation to make the mortgage payments would not result in a benefit to the Debtor that outweighs the detrimental consequences to SKH. *See Belcher v. Owens (In re Owens)*, 191 B.R. 669 (Bankr.E.D.Ky.1996) (concluding that debt was nondischargeable

where such debt was equally burdensome on both parties); *Florio v. Florio (In re Florio),* 187 B.R. 654 (Bankr.W.D.Mo.1995) (concluded that debtor failed to sustain burden of demonstrating that discharge would not burden ex-husband who earned $48,000.00 per year); *cf. Carroll,* 187 B.R. at 201 (concluding that the totality of the circumstances, including evidence that non-debtor spouse was unable to meet monthly expenses without receiving payments from debtor while debtor had the ability to make payments, supported conclusion that benefit of discharge to debtor was outweighed by detrimental consequences to ex-spouse).

The fact that SKH has paid $2,410.97 of the Debtor's nondischargeable obligation to repay the mortgages does not affect the dischargeability of such obligation. *Williams v. Williams (In re Williams),* 189 B.R. 678, 680 (Bankr.N.D.Ohio 1995) (citing *Robinson v. Robinson (In re Robinson),* 921 F.2d 252, 253 (10th Cir.1993)).

**WHETHER THE DEBTOR'S OBLIGATION TO REPAY THE CREDIT CARDS IS NONDISCHARGEABLE UNDER § 523(a)(15)**

■ The Court further finds that the Debtor's obligation to pay the Credit Cards under the Decree represents a nondischargeable property settlement under § 523(a)(15). The Debtor has the ability to pay this obligation from future income which is not necessary to be expended for the maintenance or support of the Debtor and his dependent. *See Collins v. Florez (In re Collins),* 191 B.R. 112, 115–16 (Bankr.N.D.Ill.1995) (concluding that debtor had ability to pay divorce obligation for $5,000.00 credit card debt where his monthly excess disposable income approximated $150.00). Furthermore, discharging Debtor's obligation to make the Credit Card payments would not result in a benefit to the Debtor that outweighs the detrimental consequences to SKH. *Henson,* 197 B.R. at 304; *Schmitt,* 197 B.R. at 317.

In light of the foregoing, it is therefore

ORDERED that the Debtor's complaint be, and it hereby is, denied. It is further

ORDERED that the Debtor's obligation to Susan Spencer for the weekly support payments, the credit card debts owed to Discover and JC Penney Visa, and for "repairs, maintenance, upkeep, mortgage payments, taxes and insurance" on the former marital residence be, and they hereby are, excepted from discharge.