NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:                          )     BAP No. CC-12-1591-TaDPa
                                )
MATTHEW BANKS ASHWORTH,         )     Bk. No. 11-10946-RK
                                )
                Debtor.         )
_____ )
                                )
MATTHEW BANKS ASHWORTH,         )
                                )
                Appellant,      )
                                )
v.                              )     MEMORANDUM*
                                )
KATHRYN EHRGOTT; AMRANE COHEN,  )
Chapter 13 Trustee,             )
                                )
                Appellees.      )
_____ )

Argued and Submitted on November 22, 2013
at Pasadena, California

Filed - December 16, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robert N. Kwan, Bankruptcy Judge, Presiding
_____

Appearances:    Richard G. Heston of Heston & Heston for Appellant
                Matthew Banks Ashworth; Scott H. Talkov of Reid &
                Hellyer, APC for Appellee Kathryn Ehrgott.
                _____

Before: TAYLOR, DUNN, and PAPPAS, Bankruptcy Judges.

_____

* This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Chapter 13[1] debtor Matthew Ashworth appeals from the bankruptcy court's order overruling Ashworth's objection to the proof of claim for domestic support obligations filed by his ex-spouse, Kathryn Ehrgott. Ashworth objected, not to the amount, but to § 507(a)(1)(A) priority classification of the claim, asserting that the claim is, instead, a general unsecured claim based on a pre-petition settlement of a civil action that Ehrgott filed against him for personal injury. He argued that the parties settled the civil action concurrently and in conjunction with their divorce settlement and that they did not intend any of the obligation to be for domestic support.

The bankruptcy court held a trial at which it considered testimony and evidence regarding what the parties intended at the time they agreed to the settlement terms. The bankruptcy court followed the controlling Ninth Circuit authority established in Friedkin v. Sternberg (In re Sternberg), 85 F.3d 1400 (9th Cir. 1996) and determined that Ehrgott proved by a preponderance of the evidence that, at the time of the parties' stipulated agreement, they intended the entire obligation to be for Ehrgott's support. We conclude that the bankruptcy court committed no error and AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

## BACKGROUND FACTS[2]

Ashworth and Ehrgott[3] married in Georgia in 1999. During the marriage, Ashworth worked in the banking industry and received multiple promotions with substantial increases in salary and bonuses. Ehrgott worked as a school teacher for the first three years of the marriage, but remained at home after the birth of their first child.

In April 2005, the parties separated and Ehrgott filed for divorce in Tennessee, where they resided at the time. In December 2005, during the pendency of the divorce proceeding, Ehrgott also filed a civil action against Ashworth in the Chancery Court for Knox County, Tennessee (the "Civil Action"), seeking $10 million in general and punitive damages for battery, fraud, intentional and negligent infliction of emotional distress, and negligence.[4] Later that month, Ehrgott gave birth to the parties' second child.

The Tennessee divorce court issued several orders that required Ashworth to pay child support and alimony to Ehrgott during the pendency of the divorce. In 2006, Ashworth's annual salary was $150,000, while Ehrgott had no outside source of income and cared for their two young children.

---

[2] We base the background facts, which are not in dispute, on the Joint Pretrial Order entered by the bankruptcy court on January 13, 2012 ("JPTO").

[3] Ehrgott is Ashworth's ex-spouse's current name, after remarriage.

[4] In support of her claims in the Civil Action, Ehrgott alleged that Ashworth contracted herpes simplex 1 as a result of an extramarital affair and transmitted it to her. Ashworth later stipulated that he infected Ehrgott with the virus.

- 3 -

Eventually, the parties appeared in response to notices of deposition in the Civil Action. At that time and with counsel present, the parties discussed and then entered into a settlement of all claims that arose in the divorce proceeding and the Civil Action. The parties recited the settlement terms, which were stenographically recorded, and then filed them in the form of a Final Judgment in the divorce proceeding.

In the Final Judgment, the divorce court accepted the agreement of the parties "for the settlement of property rights and the equitable division of their marital property." Dkt. #24-1 at 2. As relevant here,[5] Ashworth agreed and was ordered to pay to Ehrgott the sum of $306,000 as alimony (the "$306,000 Obligation"), payable in the amount of $1,500 per month commencing November 1, 2006 and ending December 31, 2023 (a period of over 17 years). For the period of time between November 1, 2006 and May 31, 2008, however, Ashworth was required to pay only $1,000 per month, accruing the balance of $500 per month. The deferred alimony incurred interest at the rate of 8%, with the unpaid total due on or before December 31, 2008.

The Final Judgment provides that Ashworth's "alimony obligation" is "not dischargeable in bankruptcy and terminates only upon the death of [Ehrgott]" or upon full payment. Dkt. #24-1 at 5. It further required Ashworth to obtain a life insurance policy insuring the full amount, prohibited modification of the amount, and provided that the paid amounts be

---

[5] Parenting and child support issues were addressed separately in a Permanent Parenting Plan, but fully incorporated into, and ordered and decreed by, the Final Judgment.

- 4 -

tax deductible by Ashworth and reportable as taxable income by Ehrgott.

Three paragraphs of the Final Judgment directly or indirectly refer to the resolution of the Civil Action. Paragraph 17 assigns responsibility to Ashworth for any uninsured expenses Ehrgott incurred related to medical treatment for herpes, while requiring Ehrgott to make reasonable efforts to maintain her own health insurance coverage. Paragraph 18 recites Ehrgott's agreement to sign a release and to dismiss the Civil Action. And the final paragraph provides for Ashworth to pay all costs associated with both the divorce and the Civil Action.[6]

As agreed, Ehrgott executed a written "Release" of the claims asserted in the Civil Action. The Release provides that Ehrgott executed it "in consideration of the payment to [her] of the sum of One Dollar ($1.00), and other good and valuable consideration, as set forth in a transcript of the Agreed Settlement, dated September 29, 2006, and the Final Judgment . . . ." Dkt. #24-3 at 2.

Ehrgott remarried in August 2007 and not long thereafter she relocated with the parties' minor children to Indiana, with permission of the Tennessee divorce court and over Ashworth's objection. In 2009 and 2010, the parties litigated over child support or alimony issues in multiple Indiana and Tennessee

---

[6] The Final Judgment also provides for Ashworth to pay, "as alimony," $40,000 of Ehrgott's attorney's fees directly to her attorney in five equal annual payments. Dkt. #24-1 at 6. And it labeled such payments as "a domestic support obligation" that is "nondischargeable in bankruptcy." Id.

courts.[7]

Ashworth made the required monthly payments to Ehrgott on the $306,000 Obligation up until mid-2009.[8]  On January 7, 2011, Ehrgott filed a notice of entry of sister-state judgment in Orange County Superior Court,[9] to collect on the $306,000 Obligation.[10]  Ashworth filed a chapter 13 petition on January 21, 2011, in the Central District of California.

Ehrgott filed proof of claim no. 2 in Ashworth's bankruptcy case, seeking priority for a domestic support obligation under § 507(a)(1)(A) in the amount of $259,682.81 (the "Claim").  She attached copies of a payment history spreadsheet and the Final

[7] Ehrgott first registered the child support order for enforcement in Indiana, and amounts were ordered withheld from Ashworth's wages.  Ashworth unsuccessfully petitioned in Indiana to stay the child support withholding order.  The Indiana court thereafter entered a revised child support withholding order, from which Ashworth appealed, arguing that his payments on the $306,000 Obligation should be deducted from his income when calculating child support payments.  Ashworth also petitioned the Tennessee court to extinguish the $306,000 Obligation on various grounds.  The Tennessee court denied Ashworth's petition and specifically found that the lump sum alimony agreed upon by the parties did not violate public policy.  The court thereafter dismissed Ashworth's petition as a matter of law.  The Tennessee court also stated that it would not entertain any further petitions seeking to modify the $306,000 Obligation.  Thereafter, the Indiana Court of Appeals reversed the Indiana trial court's child support order, agreeing with Ashworth that the payments on the $306,000 Obligation should reduce his child support payments.

[8] Ashworth's payments did not resume until 2011 when garnishment of his paychecks commenced pursuant to the garnishment order obtained by Ehrgott in February 2011 for support and unpaid arrears on the $306,000 Obligation.  Ashworth testified that the garnishment continued during his chapter 13 case.

[9] The record is not clear, but at some point Ashworth moved to and now resides in California.

[10] Ehrgott shortly thereafter commenced garnishment of Ashworth's wages for support and unpaid arrears on the $306,000 Obligation.

Judgment. Ashworth objected to the Claim ("Claim Objection"), commencing a contested matter.

After completion of discovery[11] the parties submitted the JPTO. Ashworth and Ehrgott presented their direct testimony by declarations, and the bankruptcy court held trial on the Claim Objection on April 19, 2012. The bankruptcy court ultimately filed and entered its Memorandum Decision finding that the Claim was a domestic support obligation. The Order Overruling Debtor's Objection to Claim No. 2 was entered on November 2, 2012 ("Order"), and Ashworth timely filed a notice of appeal from the Order.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334, 157(b)(1), and 157(b)(2)(B).

Ehrgott argues in her opening brief that we lack jurisdiction to hear this appeal based on mootness. She contends that the appeal is moot due to two motions filed in the bankruptcy court in February 2013 for dismissal of Ashworth's bankruptcy case.[12] Notably, Ehrgott does not contend that the case has been dismissed, and, in fact, the bankruptcy case

---

[11] Also during the interlude between the filing of the Claim Objection and trial, Ehrgott filed a motion for relief from stay seeking authority to allow her to seek determination of the nature of the $306,000 Obligation from the state court in Tennessee handling the family law matter. The bankruptcy court denied Ehrgott's relief from stay motion.

[12] Ashworth filed an ex parte request for voluntary dismissal, then Ehrgott filed a motion for dismissal with prejudice to re-filing.

- 7 -

remains pending.[13]

We lack jurisdiction to hear a moot appeal.  IRS v. Pattullo (In re Pattullo), 271 F.3d 898, 901 (9th Cir. 2001).  Our mootness inquiry necessarily focuses on whether we can still grant effective relief between the parties.  Id.  Here, Ehrgott fails to argue or allege facts from which we might conclude that no relief is available.

Based on the current posture of the case, we conclude that Ehrgott's mootness contention is factually not well taken.  As long as the bankruptcy case remains pending, the claims allowance process and decisions related thereto directly impact Ashworth's ability to confirm or perform under a chapter 13 plan, and relief from this Panel is available.  Therefore, the appeal is not moot, and we have jurisdiction under 28 U.S.C. § 158(a)(1).

**ISSUE**

Whether the bankruptcy court erred when it determined that the Claim was in the nature of support and therefore a "domestic

---

[13] We have exercised our discretion to consult the bankruptcy court's docket in Debtor's bankruptcy case to assist us in ascertaining the relevant facts and procedural background.  O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 959 (9th Cir. 1989).  We note that Ashworth withdrew his request for dismissal and filed a motion seeking to modify or suspend his unconfirmed chapter 13 plan.  Ashworth's motion seeks suspension of up to 34 pre-confirmation plan payments, pending the outcome of this appeal.  The chapter 13 trustee filed an opposition.  To date, the bankruptcy court has not ruled on Ehrgott's motion to dismiss or on Ashworth's motion to suspend payments, but rather continued the scheduled hearings on the pending matters multiple times.  The bankruptcy court most recently continued the hearings on both pending motions to January 2014.  Also continued for hearing in January 2014 is Ehrgott's motion seeking recovery of attorney's fees against Ashworth under Tennessee law for enforcement of support obligations and under bankruptcy law for opposing Ashworth's alleged bad faith bankruptcy filing.

- 8 -

support obligation" under § 101(14A) entitled to priority under § 507(a)(1)(A).

## STANDARD OF REVIEW

We review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. See Allen v. US Bank, NA (In re Allen), 472 B.R. 559, 564 (9th Cir. BAP 2012) ("'An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error.'")(internal citation omitted). In the context of this appeal, "[w]e review the bankruptcy court's factual determination that a debt was for alimony, maintenance, or support for clear error." See Seixas v. Booth (In re Seixas), 239 B.R. 398, 401 (9th Cir. BAP 1999). Review under the clearly erroneous standard is significantly deferential and requires us to accept the bankruptcy court's findings unless we have a definite and firm conviction that a mistake has been made. United States v. Syrax, 235 F.3d 422, 427 (9th Cir. 2000). We will affirm unless the bankruptcy court's findings were illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003).

## DISCUSSION

Ashworth based the Claim Objection on his contention that the $306,000 Obligation was not in the nature of support, but

- 9 -

instead was intended as settlement of the Civil Action, and therefore not entitled to priority. The bankruptcy court considered the testimony and other evidence at trial and found the obligation, instead, to be in the nature of support. We find no clear error in the bankruptcy court's decision.

**A.    Legal standards.**

The Bankruptcy Code, in relevant part, grants first priority status for unsecured claims for domestic support obligations that are owed to or recoverable by a former spouse. See § 507(a)(1)(A). The term "domestic support obligation" is defined in § 101(14A).[14] Section 507(a)(1) was amended and

---

[14] Section 101(14A) provides, in relevant part, as follows:

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any provision under this title, that is,
     (A) owed to or recoverable by–
          (i) a spouse, former spouse, or child of the debtor . . .
     (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor . . . without regard to whether such debt is expressly so designated;
     (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–
          (i) a separate agreement, divorce decree, or property settlement agreement;
          (ii) an order of a court of record . . .
     (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

- 10 -

§ 101(14A) was added as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Of the four elements set forth in § 101(14A), the parties here dispute only one – whether the $306,000 Obligation is in the nature of alimony or support. Courts addressing the issue of whether a debt is actually in the nature of alimony or support rely on pre-BAPCPA case law construing the phrase as contained in § 523(a)(5).[15] See Beckx v. Beckx (In re Beckx), 2009 Bankr. LEXIS 4584 at *16 (9th Cir. BAP 2009) (citing Wis. Dep't of Workforce Dev. v. Ratliff, 390 B.R. 607, 612 (E.D. Wis. 2008)). And such a determination is a "factual determination made by the bankruptcy court as a matter of federal bankruptcy law." Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1140 (9th Cir. 1998). Where the obligation arises as a result of a settlement agreement, "the intent of the parties at the time the settlement agreement is executed is dispositive." Sternberg, 85 F.3d at 1405 (citations omitted). This factual finding of intent is reviewed for clear error. Id.

In order to make the factual finding of intent, Sternberg instructs that:

> A trial court should consider several factors in determining how the parties intended to characterize the obligation. Foremost, the trial court should consider whether the recipient spouse actually needed spousal support at the time of the divorce. In determining whether spousal support was necessary, the trial court should examine if there was an "imbalance in the relative income of the parties" at the time of the divorce decree. The trial court should also consider whether the obligation terminates upon the death or remarriage of the recipient spouse and whether

---

[15] Section 523(a)(5) excepts from discharge any debt "for a domestic support obligation."

- 11 -

the payments are "made directly to the recipient spouse and are paid in installments over a substantial period of time." Finally, the labels given to the payments by the parties may be looked at as evidence of the parties' intent.

Id. (internal citations omitted).

**B. The bankruptcy court's determination that the $306,000 Obligation is in the nature of support is not clearly erroneous.**

The undisputed evidence established that at the time of the parties' settlement in 2006, Ehrgott needed support and Ashworth had the ability to pay it. When Ehrgott filed for divorce in 2005 she was an unemployed stay-at-home mother of a two-year-old and pregnant with her second child. Ashworth, on the other hand, was an employed banker with a salary of $150,000. Ashworth offered no evidence to rebut the evidence of the large imbalance between the parties' incomes.

Other factors also support the bankruptcy court's conclusion that the claim was on account of a support obligation. The parties labeled the $306,000 Obligation as support in a settlement where both were represented by counsel. The Final Judgment allowed Ashworth to claim the payments as alimony on his tax returns and required Ehrgott to report the payments as taxable income. As the bankruptcy court reasoned, inconsistent positions Ashworth took – his deduction of payments as alimony on tax returns and argument in Indiana that such payments should reduce his child support, versus his argument postbankruptcy that the payments are not alimony or support – are also probative of their characterization as spousal support.

The bankruptcy court noted that some factors arguably were inconsistent with a characterization of the $306,000 Obligation

- 12 -

as support.  The fact that the $306,000 Obligation terminates upon Ehrgott's death, but not on her remarriage may be equivocal and could mean the parties intended the $306,000 Obligation not to be support.  The bankruptcy court also noted that Ehrgott's concern that the disease she acquired from Ashworth could preclude her from attracting desirable partners, thereby contributing to her desire for monetary protection, provided some evidence that her intent, in part, was to seek monetary compensation for the personal injury as opposed to support. Finally, the bankruptcy court considered and recognized Ashworth's arguments that he intended the $306,000 Obligation solely as settlement of the Civil Action and would not have entered into the settlement but for dismissal of the Civil Action.[16]

Ultimately, the bankruptcy court found that on balance Ehrgott met her burden by a preponderance of the evidence in showing that:

> [S]he actually needed spousal support at the time of the divorce, that the obligation terminated on her death, that the payments of the obligation were to be made directly to her and are paid in installments over a substantial period of time and that the parties in their settlement agreement reflected in the Final Judgment gave the obligation the label of alimony, or support. . . .

Memorandum Decision, Dkt. #125 at 25:25-28, 26:1.  It recognized

---

[16] The bankruptcy court also acknowledged the undisputed facts that Ehrgott remarried less than one year after entry of the Final Judgment, and remains married; returned to school and obtained a graduate degree in social work in 2006-07; and gained employment in the field of social work in 2009.  The bankruptcy court gave no weight to these facts, however, as it appropriately recognized the relevant inquiry to be Ehrgott's need for support at the time of the divorce.

that the monthly payments of $1500 on the $306,000 Obligation are consistent with support obligations, although typically support obligations are modifiable based on changed circumstances.[17]  The bankruptcy court found that the amount was not "disproportionate if considered in the light of providing support for a single parent with two dependent minor children and without employment" (id. at 21:23-25) and that termination of the payments in 2023, when the parties' second child turns 18, was consistent with the need for support in child-rearing years.  The bankruptcy court concluded that "[t]here is simply no way to look past the evidence that [Ehrgott] was in a state of need at the time of the divorce."  Id. at 26:4-5.  And, even though other factors in the Sternberg test "point in different directions, . . . on balance, [the factors] indicate that the obligation was in the nature of support."  Id. at 26:22-23.

On appeal, Ashworth states that he takes no issue with the bankruptcy court's factual findings.  He implicitly argues however, that the bankruptcy court's ultimate factual finding is error in light of the unique facts here.  Without citation to the record or allegation of specific error by the bankruptcy court, he makes a new argument on appeal that, in the context of a global settlement of multiple claims, the bankruptcy court should consider whether the obligation in question continues to meet a former spouse's reasonable need for support.  Ashworth argues that not to do so can result in an unjust windfall at the expense

---

[17] The bankruptcy court reviewed the Tennessee statutory provisions governing lump sum alimony awards and found them not inconsistent with the policy behind the definition under the Bankruptcy Code.

- 14 -

of other general unsecured creditors.[18]  Ashworth, however, presented neither argument nor evidence of need-based support versus non-need-based support - he only argued to the bankruptcy court that none of the settlement was intended to serve as support.  As Ashworth did not present this argument to the bankruptcy court, it is not properly raised for the first time on appeal.

We also decline to consider Ashworth's newly raised argument that perhaps some part of the $306,000 Obligation was not in the nature of support.  Ashworth argued "all or nothing" to the bankruptcy court and may not properly raise this issue for the first time on appeal.

We conclude, based on our review of the record before us and consideration of the properly presented issues, that the bankruptcy court's determination that the $306,000 Obligation is in the nature of support, and thus entitled to priority, is neither illogical nor implausible and is well supported by the record.  We, therefore, find no reversible error.

---

[18] In support of this contention, Ashworth argued, both in his brief and by counsel at oral argument in this appeal, that classification of the $306,000 Obligation as a priority claim in his chapter 13 case requires that the entire claim amount be paid in full during the chapter 13 case.  This question was not presented to nor addressed by the bankruptcy court, nor do we consider it here.  We note, however, that Ashworth cites no legal authority for the proposition that a judgment debtor's bankruptcy filing requires that all future (i.e. postpetition) payments payable under a contractually based judgment for a fixed term/fixed amount domestic support obligation must be accelerated despite the judgment's requirement that payments be made monthly over a fixed term.  Nor have we located any such authority.  See In re Hutchens, 480 B.R. 374, 383-84 (Bankr. M.D. Fla. 2012) (analyzing pre- and postpetition domestic support obligations separately).

**C.    We decline to award attorney's fees requested by Ehrgott.**

In her opening brief, Ehrgott urges this Panel to award her attorney's fees on appeal as allowed by Tennessee law. Ehrgott bases her request on the fact that Ashworth previously litigated support in other courts, and on various allegations of improper motives and speculation about what Ashworth plans to do in the future. We decline to exercise our discretion to award to Ehrgott any attorney's fees on this record. This denial is without prejudice to Ehrgott seeking recovery in the bankruptcy court or in state court.

**CONCLUSION**

Based on the foregoing, we AFFIRM.

- 16 -
