In re William R. COOKE and Shannon K. Cooke, Debtors.

Debra A. COOKE, Plaintiff,

v.

William R. COOKE, Defendant.

Bankruptcy No. 96–3122.

United States Bankruptcy Court, N.D. Ohio.

July 3, 1997.

John Donovan, Napoleon, OH, for Plaintiff.

Daniel G. Camick, Toledo, OH.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after Trial upon Plaintiff's Complaint to Determine the Dischargeability of a Debt against her former husband, Defendant William R. Cooke. At the Trial, the parties were afforded the opportunity to present evidence and make arguments in support of their respective positions. The Court has reviewed the evidence, arguments of Counsel, exhibits, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the debt at issue in this case is dischargeable.

### FACTS

This adversarial proceeding was initiated upon the Complaint of Debra K. Cooke (hereinafter "Plaintiff") under § 523(a)(15) of the Bankruptcy Code.

Plaintiff and William R. Cooke (hereinafter "Defendant") were married on January 29, 1977, and three children were born as issue of this marriage. On March 23, 1990, Plaintiff and Defendant became indebted to First National Bank of Northwest Ohio (hereinafter "First National") through the execution of a promissory note.

A Judgment Entry dated November 19, 1993, dissolved the marriage of Plaintiff and Defendant. The Separation Agreement, incorporated by reference in this Judgment Entry, provided that Defendant was to pay the debt to First National and hold Plaintiff absolutely harmless on this debt. Subsequently, Defendant married his current wife, Shannon K. Cooke, who is a co–debtor in the related bankruptcy case.

On November 11, 1995, the Plaintiff and Defendant signed a Judgment Entry providing that they will be liable to First National, jointly and severally, in the amount of Six Thousand Two Hundred Seventy–four Dollars and 35/100 ($6,274.35), plus interest at the rate of One and 56/100 Dollars ($1.56) per day.

Defendant and Shannon Cooke (hereafter the "Debtors") subsequently had a son who was born with a birth defect. On February 22, 1996, soon after the birth of their son, the Debtors filed a petition for bankruptcy relief under Chapter 7 Bankruptcy Code. In the Debtors' schedule of current income they claimed a combined monthly income of One Thousand Nine Hundred Fifty–four Dollars ($1,954.00), and in their schedule of current expenditures they claimed monthly expenses of One Thousand Nine Hundred Fifty–eight Dollars ($1,958.00). On June 24, 1996, the Debtors were granted a discharge of their dischargeable debts.

At trial, the Debtors claim that their financial situation has worsened since the time they filed the bankruptcy petition. Defendant testified that as a result of postpetition complications involving his son's birth defect, he had to reduce his work hours from over forty hours per week to between thirty and thirty-five hours per week, in order to enable him to attend his son's weekly medical appointments. For the same reason, his current wife testified that she quit her full-time job as a pre-school teacher to work part-time at a library. Further, not only did the new position reduce the hours she worked, but also reduced her pay per hour from Seven Dollars ($7.00) to Five and 50/100 Dollars ($5.50). The Defendant stated he presently earns Thirteen Dollars ($13.00) per hour. No other evidence was offered to prove the necessity of these reductions in income except the testimony of the Debtors.

The Plaintiff, however, presented a child support worksheet which was used postpetition to modify the Defendant's child support payments in the Domestic Division of the Henry County Court of Common Pleas. This worksheet was filed in that Court on October 1, 1996. This document states that

the Defendant's gross income, not including overtime and what appears to be cash received from cashing in retirement pension stock, to be Twenty–eight Thousand Nine Hundred Twenty–four Dollars ($28,924.00). This Court finds this amount to be the most reliable figure, notwithstanding the Debtors' uncollaborated testimony that they both must reduce their work hours below a full–time schedule in order to take their child to medical appointments. This Court does find it reasonable that Defendant would not be in a position to work overtime. This Court also finds it reasonable that his wife would have reduced her hours of employment, and therefore income, to a take home pay of Four Hundred Dollars ($400.00) per month in order to care for their child. Defendant's wife also receives approximately One Hundred Forty Dollars ($140.00) per month in child support for a child born from her first marriage. Accordingly, and based on these modifications of the figures in the Defendant's current income statement, this Court calculates the Defendant's household income as follows:

| | | |
|---|---|---|
| Monthly gross wages | | $2,410.00 |
| Less: | | |
| | Payroll taxes and social security [1] | 602.00 |
| | Union dues | 26.00 |
| | Child support [2] | 520.00 |
| Defendant's Net Monthly Income | | 1,262.00 |
| Plus: | | |
| | Current wife's monthly income | 400.00 |
| | Child support received by current wife [3] | 140.00 |
| Defendant's Household Net Income | | $1,802.00 |

Additionally, at trial the Defendant testified that though he claimed a Seven Hundred Fifty Dollar ($750.00) tools of trade exemption in certain cement-working tools, he derives no income from this pursuit but rather only occasionally does work for friends who may or may not return the favor.

The Debtors also testified that some changes have occurred in their monthly expenses since the bankruptcy petition and schedules were filed. The Defendant testified that as a result of his son's additional medical problems, the Debtors have additional medical expenses which were not included in the original bankruptcy schedules. These expenses include approximately Eighty Dollars ($80.00) per month for physical therapy and neurological observation (the amount not covered by insurance), and Ten Dollars ($10.00) per month for prescription drugs. Defendant has also worked out a settlement with the Internal Revenue Service whereby he will pay One Hundred Dollars ($ 100.00) per month for twelve more months. Also, Defendant testified that he no longer owes money to one Rex Speiss, to whom he was paying One Hundred Dollars ($100.00) per month. Accordingly, and based on these modifications to the figures in the Debtors' statement of current expenditures, this Court finds the Defendant's household expenditures as follows:

1. The payroll tax and social security on the Defendant's Statement of Current Income was twenty–two percent of gross income. For the purpose of approximating the Defendant' payroll tax and social security deduction herein, this Court used a figure which was twenty–five percent of gross income.

2. Defendant owes One Hundred Twenty Dollars ($120.00) per week in child support based upon the child support worksheet. This yields an average monthly payment of Five Hundred Twenty Dollars ($520.00) (weekly payment multiplied by fifty–two (52) weeks per year, then divided by twelve (12) months per year).

3. At trial the Debtors testified that the child support received from Shannon Cooke's former husband has recently increased to Thirty–two and 20/100 Dollars ($32.20) per week, which equates to approximately One Hundred Forty Dollars ($140.00) per month (the weekly payment multiplied by fifty–two (52) weeks per year, then divided by twelve (12) months per year).

| | |
|---|---|
| Rent or mortgage payment | $530.00 |
| Electric | 210.00 |
| Telephone | 40.00 |
| Cable | 26.00 |
| Home Maintenance | 20.00 |
| Food | 400.00 |
| Clothing | 50.00 |
| Medical expenses | 160.00 |
| Transportation | 130.00 |
| Recreation | 50.00 |
| Charitable contributions | 0.00 |
| Home insurance | 15.00 |
| Auto insurance | 80.00 |
| Henry County Credit Union (wife's car) | 212.00 |
| Pre-school, wife's son [4] | 40.00 |
| IRS settlement | 100.00 |
| Total monthly expenses | $2,063.00 |

Thus, according to these figures, the Debtors monthly expenses exceed their monthly income by Two Hundred and Sixty-one Dollars ($261.00).

The Plaintiff, Debra A. Cooke, has testified to and submitted schedules which show a yearly net income of approximately Twenty–two Thousand Seventy–five Dollars ($22,-075.00), or approximately One Thousand Eight Hundred Forty Dollars ($1,840.00) monthly, and monthly expenditures of One Thousand Six Hundred Sixteen ($1,616.00). This yields a net monthly income of Two Hundred Twenty–four Dollars ($224.00). This Court finds this information reasonable and credible, and also realizes that such schedules cannot fully quantify the expenses associated with raising the three children.

### LAW

The Bankruptcy Code, 11 U.S.C. § 523, et al., provides, in pertinent part:

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

> > (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

> > (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record, a determination made in accordance with State or territorial law by a governmental unit unless—

> > (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

> > (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

### DISCUSSION

The issue to be resolved herein is whether the Defendant may discharge his property settlement obligation to repay the First National debt pursuant to § 523(a)(15) of the Bankruptcy Code. Determinations concerning the dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(i). Thus, this case is a core proceeding.

---

**4.** This expense was also brought out at trial.

Section 523(a)(15) was enacted as part of the Bankruptcy Reform Act of 1994, and applies to bankruptcy cases filed after October 22, 1994. *In re Woodworth,* 187 B.R. 174, 175 (Bankr.N.D.Ohio 1995). The creditor initially bears the burden of establishing that the debt is not a debt which is nondischargeable under § 523(a)(5), and that the debt was incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. *In re Henderson,* 200 B.R. 322, 324 (Bankr. N.D.Ohio 1996); *In re Smither,* 194 B.R. 102, 107 (Bankr.W.D.Ky.1996). Upon such a showing by the objecting creditor, the burden of proof then shifts to the debtor to establish either an inability to pay under § 523(a)(15)(A), or that a discharge would result in a benefit to the debtor that would outweigh the detriment to the plaintiff under § 523(a)(15)(B). *Henderson* at 324; *Smither* at 107; *In re Carroll,* 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995).

The parties do not dispute that the debt at issue herein is not nondischargeable pursuant to § 523(a)(5), as the debt is not in the nature of alimony, maintenance or support. Further, the debt was incurred in connection with a separation agreement. Therefore, the burden shifts to the Defendant to prove his right to discharge this debt under § 523(a)(15).

This Court must first determine whether the debtor has the ability to repay the debt pursuant to § 523(a)(15)(A). The Defendant's financial condition at the time of trial should be the starting point in making this determination. *Henderson,* 200 B.R. at 326; *Carroll,* 187 B.R. at 200; *Smither,* 194 B.R. at 108 (A court may consider facts and circumstances concerning a debtor's future earning potential, as well as his or her income as of the date of the trial in determining his or her ability to pay). If the debtor does not have the ability to repay the debt, this ends the matter and the debt is discharged under § 523(a)(15)(A). Even if the debtor does have the ability to repay the debt, the debtor could still obtain a discharge under § 523(a)(15)(B) if discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the debtor's former spouse or children.

In this case, Defendant claims monthly expenses which exceed his income by Two Hundred Sixty-one Dollars ($261.00). However, this Court is aware that the One Hundred Dollars ($100.00) per month settlement he is presently paying to the IRS will be satisfied relatively soon, and that Defendant may generate some extra income from the cement tools for which he has claimed a tools of trade exemption. Even so, it nevertheless appears that Defendant will not have excess income to repay the debt at issue herein. Accordingly, the debt is dischargeable pursuant to § 523(a)(15)(A).

Accordingly, it is

***ORDERED*** that the debt at issue in this case be, and is herein, ***DISCHARGEABLE.***