In re John L. **MELTON**, Debtor.

**Debra A. Melton, Plaintiff,**

v.

**John L. Melton, Defendant.**

**Bankruptcy Nos. 97–3322, 97–32496.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 4, 1999.

Gordon R. Barry, Toledo, OH, for defendant.

John J. Hunter, Sr., Toledo, OH, for plaintiff.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Bankruptcy Judge.

This cause comes before the Court upon the Defendant's Motion for Reconsideration of this Court's Order entered on August 10, 1998. This Court has reviewed the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court shall adhere to its previous Order, and thus the Debtor's Motion for Reconsideration is DENIED.

## FACTS

This case stems from a divorce that occurred on February 6, 1997, between the Defendant, John L. Melton (hereinafter Debtor), and the Plaintiff, Debra A. Melton (hereinafter Plaintiff). Two children were born as issue from the marriage, both of whom are under the age of majority. On June 20, 1997, the Debtor, who is now remarried, filed for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, the Plaintiff brought an adversarial action pursuant to 11 U.S.C

§ 523(a)(15), to except from discharge certain joint credit card debts which the Debtor was ordered to completely assume pursuant to the Parties divorce decree. The Parties' total outstanding liability on these credit card obligations was determined to be just under Seventeen Thousand Dollars ($17,000.00).

A trial was subsequently held on the Plaintiff's Complaint, and from the evidence presented at the trial the Court found that the Plaintiff and the Debtor had the following income and reasonable expenses:

Income–

| | | John Melton (bi-weekly) | Debra Melton (weekly) |
|---|---|---|---|
| Gross | | $1,430.71 | $ 365.38 |
| Less: | | | |
| | Taxes | 433.37 | 85.72 |
| | Child Support/Alimony | 413.40 | |
| | 401–K | | 18.72 |
| | Loan | | 14.64 |
| Net | | $ 583.94 | $ 246.30 |
| Monthly equivalent | | $1,265.20 | $1,069.25 |
| Other Income: | | | |
| | Tax Refund | 200.00 | |
| | Child Support/alimony | | 413.40 |
| Individual monthly net income | | $1,465.20 | $1,482.65 |

Expenses–

| | | John Melton | Debra Melton |
|---|---|---|---|
| Rent | | $ 282.50 | $ 540.51 |
| | House Insurance | 10.67 | |
| | Real Estate Taxes | 25.34 | |
| Utilities | | | |
| | Electric | 57.50 | 137.00 |
| | Heat | 42.50 | |
| | Water | 7.50 | 20.00 |
| | Telephone | 20.00 | 20.00 |
| | Cable | 7.50 | 26.00 |
| | Garbage Removal | 6.50 | |
| Food | | 250.00 | 450.00 |
| Clothing | | 37.50 | 100.00 |
| Laundry/Dry Cleaning | | 15.00 | 15.00 |
| Medical/Dental | | 20.00 | 172.00 |
| Gasoline for Auto | | 60.00 | 60.00 |
| Insurance | | | |
| | Life | 59.00 | |
| | Auto | 40.00 | 50.00 |
| Maintenance | | | |
| | Home | 37.50 | 37.50 |
| | Auto | 50.00 | |
| Union Dues | | 25.75 | |
| Auto Payments | | 200.00 | |
| Instalment Payments: | | | |
| | Ft. Wayne National | | 58.56 |
| | PNC Bank | | 58.00 |
| | Chevy Chase | | 28.00 |
| | Stage–Milliken | | 50.00 |
| | Karen Gallagher, Esq. (Divorce Attorney) | | 50.00 |
| Miscellaneous/Personal Expenses | | | |
| | Lessons for Children | | 65.00 |
| | Child Care | | 35.00 |

|  | (bi-weekly) | (weekly) |
|---|---|---|
| Total Monthly Expenses | 1,254.76 | 1,972.57 |
| Total Monthly Net Income | 1,465.20 | 1,482.65 |
| Monthly Surplus (Deficit) | $ 210.44 | ($489.92) |

Based upon the foregoing findings of facts and the other evidence properly before the Court, the Court issued a Memorandum Opinion and Decision in which it found that the Debtor's obligation to pay the credit card obligations was a partially nondischargeable debt pursuant to 11 U.S.C. § 523(a)(15). Specifically, the Court granted the Debtor's discharge with respect to the Debtor's legal obligation to pay the third-party creditors holding unsecured claims on the Parties' credit card debts. However, the Court made the dischargeability of these debts contingent upon the Debtor paying to the Plaintiff the sum of Two Hundred Dollars ($200.00) every month for a period of five years so as to help the Plaintiff defray the cost of alone paying the credit card debts. In addition, this Court also ruled that if, for any reason, the Plaintiff became no longer legally liable to pay the Parties' credit card debts (i.e., the Plaintiff seeks and obtains a bankruptcy discharge), the Debtor's obligation to pay the Plaintiff would terminate. The foregoing decisions were based upon the following analysis conducted by the Court:

First, after finding that the Plaintiff had met her burden of proof under § 523(a)(15), the Court held that the burden of proof thereafter shifted to the Debtor to establish that one of the two exceptions to nondischargeability under § 523(a)(15) was applicable. Specifically, the Court held that if the Debtor could establish that he did not have the ability to pay the credit card debts at issue, he would be entitled to a discharge under § 523(a)(15)(A), or, in the alternative, if the Debtor could establish that the benefit to him of receiving a bankruptcy discharge outweighed the detrimental consequences such a discharge would cause to the Plaintiff, the Debtor would be entitled to a discharge under § 523(a)(15)(B). Second, the Court found that neither of the two foregoing exceptions were applicable. This decision was at first predicated on the Court finding that the Debtor, having some surplus income, had at least the partial ability to repay the credit card debts. (The Court for equitable reasons did not factor in the income of the Debtor's new spouse). In addition, after taking into consideration such factors as; the income of the Parties, the custody of the Parties' children, and the ability of the Parties to defray the cost of household expenses, the Court held that the benefit the Debtor would receive from a bankruptcy discharge did not outweigh the detrimental consequences which would befall the Plaintiff if such a discharge was granted.

Ten days after the Court issued its Memorandum Opinion and Decision, the Debtor brought a Motion asking the Court to Reconsider its decision. In his Motion, the Debtor does not question the Court's application of the law. Rather, the Debtor asserts that the Court based its decision on inaccurate factual findings, and according to the Debtor the rectification of these factual findings could very well cause this Court to reach a conclusion more favorable to his position. Specifically, the Debtor contends that the following two adjustments should be made with respect to the factual findings the Court made regarding the Plaintiff's financial figures. First, the income the Plaintiff receives from child support should be increased from the current figure of Four Hundred Thirteen and 40/100 Dollars ($413.40) per month, to Eight Hundred Ninety-five Dollars

($895.00) per month. Second, given the fact that the Court imputed monthly income to the Debtor on the basis of his 1997 income tax return, the Court should also impute to the Plaintiff an additional Two Hundred Sixty-one and 28/100 Dollars ($261.28) per month as income because the Plaintiff received a 1997 tax refund in the amount of Three Thousand One Hundred Thirty-five and 33/100 Dollars ($3,135.33).

### LAW

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

### DISCUSSION

■ Determinations concerning the dischargeability of particular debts; administration of the debtor's estate; and proceedings affecting the adjustment of the Debtor–Creditor relationship are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

The Debtor seeks to have this Court reevaluate its previous judgment, whereby the Court partially denied the Debtor's discharge, on the basis that the Court's decision was predicated on an improper factual basis. However, before examining the substantive portion of the Debtor's claim, a procedural issue must first be addressed.

■ The method by which the Debtor seeks to have the Court reexamine its previous decision in this case is by, and through, a "Motion for Reconsideration." However, both the Federal Rules of Civil Procedure and the Bankruptcy Rules of Procedure do not expressly recognize a motion for reconsideration in haec verba. Nevertheless, the Federal Courts are unanimous in finding that a motion so denominated will be treated either as a Motion to Alter or Amend under F.R.C.P. 59, or as a Motion for Relief from Judgment pursuant to F.R.C.P. 60; the determination of which is entirely dependent on the time between the court's rendition of the judgment, and the time in which the litigant files his or her motion for reconsideration. *See, e.g., Smith v. Hudson* 600 F.2d 60 (6th Cir.1979), *certiorari dismissed* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415; *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167 (5th Cir.1990), *rehearing denied* 920 F.2d 259; *Appeal of Sun Pipe Line Co.,* 831 F.2d 22 (1st Cir. 1987), *certiorari denied* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922. Thus, if the motion is filed within ten days after the court's rendition of the judgment, the motion for reconsideration will be deemed to be a Motion to Alter or Amend. However, if the motion is filed after that time, it will be considered a Motion for Relief from Judgment. *Smith v. Hudson,* 600 F.2d 60, 62 (6th Cir.1979) (citing *Sonnenblick–Goldman Corp. v. Nowalk,* 420 F.2d 858 (3rd Cir.1970)), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In

the case sub judice, the Debtor filed his Motion for Reconsideration within ten days of the Court's rendition of the Judgment. Thus, the Debtor's Motion will be treated as a Motion to Alter or Amend pursuant to F.R.C.P. 59, which is made applicable to this proceeding by Bankruptcy Rule 9023. *See also* Bankruptcy Rule 9006(a).

It is clear that a Motion to Alter or Amend is an appropriate method by which a party may seek to abrogate a judgment entered by a Court, which is predicated on a factual error. *Norman v. Arkansas Dept. of Educ.*, 79 F.3d 748 (8th Cir.1996). As the Supreme Court noted in *White v. New Hampshire Dep't of Employment Sec.*, Rule 59 of the Federal Rules of Civil Procedure was adopted "to mak[e it] clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." 455 U.S. 445, 450, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982) (internal quotations omitted). However, it must be stressed that the mere fact that a court makes a mistake in one or more of its factual conclusions is not, by itself, enough to warrant the granting of a motion for reconsideration. Rather, relief under Fed.R.Civ.P. 59 is only accorded when the factual error actually affects the "correctness of the judgment." *Seshachalam v. Creighton Univ. Sch. of Medicine*, 545 F.2d 1147, 1147 (8th Cir.1976) (per curiam), *cert. denied*, 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1093 (1977), *see also* 11 Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure: Civil 2nd § 2810.1 at 125 (1995).

Accordingly, an action to rectify a factual error, brought by a party pursuant to F.R.C.P. 59, necessarily requires this Court to undertake a two-step analysis. The first step, of course, is for the Court to ascertain whether any factual errors actually occurred. Thus, if the Court finds that no factual errors occurred, the Motion must be denied as F.R.C.P. 59 is not meant to be a tool by which a party may raise arguments or present evidence that should have been raised in the first instance. *McConocha v. Blue Cross and Blue Shield Mutual of Ohio*, 930 F.Supp. 1182, 1184 (N.D.Ohio 1996). Next, if the Court is completely satisfied that at least one factual error did in fact occur, the second step of the analysis may be conducted which requires the Court to ascertain whether the factual error actually affected the validity of the judgment. However, in conducting this analysis a court should only address those holdings which were predicated on the factual error. *Id.* For example, as applied to the case sub judice, unless the substantive elements of § 523(a)(15) would require the Court to take into consideration the Plaintiff's income, such issues will not now be reexamined in this Opinion.

Pursuant to the first step of the above analysis, this Court has again reviewed all the evidence in this case, including the exhibits presented by the Parties' at their nondischargeability trial. Based upon this evidence, and the points of error delineated by the Debtor, the Court finds that incorrect factual conclusions were in fact contained in this Court's original Memorandum Opinion and Decision. Specifically, the Court finds that the Plaintiff's income from child support should be recognized as being Eight Hundred Ninety-five Dollars ($895.00) per month, and an additional Two Hundred Sixty-one and 28/100 Dollars ($261.28) per month should be imputed to the Plaintiff as income as a result of the proceeds the Plaintiff received from her 1997 income tax return. Thus, the Court will recognize the Plaintiff's gross income as being Two Thousand Two Hundred Twenty-five and 53/100 Dollars ($2,225.53) per month, giving the Plaintiff a disposable income of Two Hundred Fifty-two and 96/100 Dollars ($252.96) per month. Accordingly, the Court will now reconsider whether the conclusions initially reached by this Court in it original Memorandum Opinion and

Decision would be affected by this upward adjustment in the Plaintiff's income.

■■■■ The Plaintiff's cause of action in this case was brought pursuant to § 523(a)(15) of the United State Bankruptcy Code. This Code section excepts from discharge those debts which are incurred by a debtor in the course of a divorce decree or separation, or in connection with a separation agreement, divorce decree or other order of a court of record, and are not the type of debts excepted from discharge under § 523(a)(5)[1] of the Bankruptcy Code. Like the other exceptions to discharge contained in § 523(a) of the United States Bankruptcy Code, the party contesting the dischargeability of the debt bears the initial burden to prove by a preponderance of the evidence that the elements of the statute have been met. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr. N.D.Ohio 1996). For an action brought pursuant to § 523(a)(15), this entails the non-debtor spouse establishing that the debt at issue was in fact incurred by the debtor in the course of a separation or divorce, or under a separation agreement or court order. *Id.* In the Court's previous decision in this case, it was held that the Plaintiff had met her burden of proof with respect to this requirement. However, as this finding was not in the least part predicated on the Plaintiff's income, the Court will not now readdress this issue.

■■■■ The § 523(a)(15) exception to discharge is, however, limited in two very important respects. First, the exception does not apply when the debtor does not have "the ability to pay" the debt from income not reasonably to be expended in support of the debtor or dependents of the debtor. § 523(a)(15)(A). (This exception has become to be known as the "ability to pay" test. *See e.g., Willey v. Willey (In re Willey)*, 198 B.R. 1007, 1014 (Bankr. S.D.Fla.1996)). Second, the § 523(a)(15) exception to discharge does not apply when "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." § 523(a)(15)(B). These two limitations are read in the disjunctive, and thus a debt will not be excepted from discharge upon a finding that either of these limitations exists. For example, a debtor may be found to have the ability to pay, but would still be entitled to a discharge if the benefit to the debtor outweighs the detrimental consequences to the former spouse. However, it is the debtor who bears the burden of establishing either of the exceptions to § 523(a)(15) is applicable. *Cooke v. Cooke (In re Cooke)*, 213 B.R. 830, 834 (Bankr. N.D.Ohio 1997); *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 190 (Bankr. N.D.Ohio 1998).[2]

In this Court's previous decision in this case, the Court conducted an analysis of both of the foregoing limitations to the § 523(a)(15) exception to discharge, and concluded that the Debtor must pay at least part of the credit card debts at issue.

1. Section 523(a)(5) excepts from discharge debts to "a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child." In this case, the Court did not address this statutory section because the Plaintiff's Complaint was not at all based on it.

2. Section 523(a)(15) contains no express burden of proof allocation for the exceptions contained therein. Further, the Federal Rules of Bankruptcy Procedure and the Legislative History of the statute do not provide any guidance. This has lead to a disagreement among the bankruptcy courts as to whether the creditor or debtor should bear the burden of proof for the exceptions contained in § 523(a)(15). *See e.g., Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr.E.D.Ky.1996); *Kessler v. Butler (In re Butler)*, 186 B.R. 371, 373–75 (Bankr.D.Vt. 1995). This Court, following the majority view, has allocated the burden of proof on the debtor. *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 190 (Bankr.N.D.Ohio 1998); *Cooke v. Cooke (In re Cooke)*, 213 B.R. 830, 834 (Bankr.N.D.Ohio 1997)

This decision was at first predicated on the Court's assessment that the Debtor's financial circumstances did not rise to the level of meriting a discharge under § 523(a)(15)(A). Specifically, the Court found that since the Debtor had a disposable income of just over Two Hundred Dollars ($200.00) per month, the Debtor had at least the partial ability to pay the credit card debts. However, like the burden of proof issue, this holding will not now be readdressed in this Opinion because the Plaintiff's income played no actual role in the Court's decision.

In addition, the Court also found that the Debtor was unable to avail himself to the protection of § 523(a)(15)(B), as the factual circumstances present in the case simply did not support a finding that the Debtor would receive a benefit from the bankruptcy discharge that would outweigh the detrimental consequences that such a discharge would cause to the Plaintiff. However, this finding, at least in part, was based on the Plaintiff's income. Specifically, this Court stated,

> [i]n this case the Court finds that Defendant has not met his burden of showing that he is entitled to a discharge under § 523(a)(15)(B). Though the incomes of Defendant and Plaintiff are roughly equal after adjustments for support payments, it is clear that Plaintiff has additional expenses as a result of caring for the parties' two children, and because she does not have another wage earner with which to split household expenses.

Accordingly, the Court will now reexamine its previous analysis under § 523(a)(15)(B) to determine whether, in light of the upward adjustment in the Plaintiff's income, the outcome of this case should be amended.

▇▇ Section 523(a)(15)(B) has been referred to as the "Balancing Test." *See e.g., Molino v. Molino*, 225 B.R. 904, 908–09 (6th Cir. BAP 1998). Under this test, the Court must undertake a two-step analysis when determining the dischargeability of a debt incurred vis-a-vis a divorce. First, the Court determines the benefit to the debtor of receiving a bankruptcy discharge, and the detriment to the creditor-spouse if the discharge is granted. Next, the Court must weigh the benefit and the detriment against each other, and if the Court determines that the debtor's benefit outweighs the creditors detriment, the debt must be discharged. On the other hand, if the Court concludes that the creditor's detriment outweighs the debtor's benefit, the debt remains nondischargeable. *See, e.g., Campbell v. Campbell (In re Campbell)*, 198 B.R. 467, 475 (Bankr. D.S.C.1996). Nevertheless, actually applying this test to any given factual situation can be difficult, because of the lack of clear and concise guidelines contained in the statute. In fact, bankruptcy courts, when interpreting this statutory section, have frequently written such epigrams as, applying § 523(a)(15)(B) to a case requires a court to do "an odd balancing [upon] an impossibly amorphous standard" and, "have we ever been called upon to decide a more illusive statutory standard than the benefit of a discharge to Party A versus the detrimental consequences to Party B?" *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 304 (Bankr.E.D.Ark.1996); *Hill v. Hill (In re Hill)*, 184 B.R. 750, 756 (N.D.Ill.1995). Thus, as might be expected, bankruptcy courts have not been entirely consistent in their application of § 523(a)(15)(B), with many different approaches for applying § 523(a)(15)(B) having been put forth. *In re Crosswhite*, 148 F.3d 879, 888 n. 16 (7th Cir.1998) citing Barbara J. Van Gorder, *Section 523(a)(15) of the Bankruptcy Code: A Paving Stone on the Road to the Region of Hades Reserved for Litigation Nightmares*, 77 B.U.L.Rev. 1121, 1125, 1146–49 (1997); Meredith Johnson, *At the Intersection of Bankruptcy and Divorce: Property Division Debts Under the Bankruptcy Reform Act of 1994*, 97 Colum.L.Rev. 91, 110, 113, 125 (1997).

▇▇ In the Court's previous decision in this case, the Court, after weighing the

pros and cons of the various approaches developed by the bankruptcy courts for interpreting § 523(a)(15)(B), adopted the "standard of living" test espoused by the United States Bankruptcy Court for the Western District of Kentucky in the case of *In re Smither*, 194 B.R. 102 (Bankr. W.D.Ky.1996). Again, for purposes of this analysis, the Court will apply this test.

■ The "standard of living" test espoused by the bankruptcy court in *Smither* requires a court to conduct the following analysis: First, the court determines what the parties' relative standards of living are based upon their financial status. *Smither*, 194 B.R. at 111. In making this determination, the court in *Smither* stated that at a minimum a bankruptcy court should consider the following, but by no means exclusive, list of factors:

1.) The amount of debt involved, including all payment terms;

2.) The current income of the debtor, objecting creditor and their respective spouses;

3.) The current expenses of the debtor, objecting creditor and their respective spouses;

4.) The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;

5.) The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor, objecting creditor and their respective spouses;

6.) The health, job skills, training, age and education of the debtor, objecting creditor and their respective spouses;

7.) The dependents of the debtor, objecting creditor and their respective spouses, their ages and any special needs which they may have;

8.) Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since the entry of the divorce decree;

9.) The amount of debt which has been or will be discharged in the debtor's bankruptcy;

10.) Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and

11.) Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the 11 U.S.C. § 523(a)(15) issues.

*Id.* Second, the court compares the parties' respective standards of living to determine the true benefit of the debtor's possible discharge against any hardship the former spouse would suffer as a result of the debtor's discharge. Finally, after conducting this analysis, the court asks whether the debtor's standard of living will be greater than or approximately equal to that of the creditor's if the debt is not discharged. If the court finds this is the case, then the debt is nondischargeable under § 523(a)(15)(B). On the other hand, if the court determines that the debtor's standard of living will fall materially below the creditor's standard of living if the debt is not discharged, then the court must discharge the debt under § 523(a)(15)(B). *Id.*

■ Applying this standard to the instant case, the Court again finds, for the following reasons, that the Debtor is not entitled to a discharge under § 523(a)(15)(B). First, the financial status of the Parties is not in any significant way disparate with one another. For example, even with the upward adjustment in the Plaintiff's income, the amount of disposable income available to each of the Parties is roughly equal, standing at a little over $200.00 per month. Second, after reviewing the reasonable expenses of the Parties, and given the fact that the Plaintiff is the residential parent of the Parties' children, it seems apparent to the Court that the Debtor's standard of living is at least equal to or even greater than that of the Plaintiff. This is especially true, when the Court considers the fact that the Debtor currently has a party with whom he can share household and other living expenses. By comparison, the Plaintiff, being a single

parent, does not have this luxury. Thus, given these considerations, the Court finds that requiring the Debtor to pay the Plaintiff the sum of Two Hundred Dollars ($200.00) per month for a period of five years will not cause the Debtor's standard of living to fall materially below that of the Plaintiff's standard of living. Further, reinforcing this view is the fact that the Debtor's financial difficulties have surely been alleviated by the fact that the Debtor obtained a discharge on his other unsecured debts, which totaled more than Sixty Thousand Dollars ($60,000.00) (see factor nine, supra).

In summary the Court finds that the Debtor was not prejudiced by the incorrect factual findings originally made by the Court, and thus the Court adheres to its original decision. In reaching the conclusion found herein, the Court has reconsidered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Debtor, John L. Melton, Motion for Reconsideration be, and is hereby, DENIED.