**In re David CALABRESE, Debtor.**

**Lori Calabrese, Plaintiff,**

**v.**

**David Calabrese, Defendant.**

**No. 01–3036.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 6, 2002.

---

Martha L. Riewalt, Toledo, OH, for Plaintiff.

Jeffrey T. Vild, Oregon, OH, for Defendant.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. At issue in this Trial was whether a certain marital debt owed by the Defendant/Debtor to the Plaintiff was dischargeable under either of the exceptions to nondischargeability contained in paragraphs (A) and (B) of 11 U.S.C. § 523(a)(15). These sections provide, respectively, that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or

separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

In support of their respective positions under § 523(a)(15), the Parties were afforded the opportunity to present evidence and make any arguments that they wished the Court to consider in reaching its decision. The Court, however, at the conclusion of the Trial held on this matter, found that it had insufficient evidence to render a legal decision. The Parties were therefore ordered to provide to the Court, by way of Bankruptcy Schedules I & J, an itemized list of their *current* monthly income and expenses. The Court is now in receipt of these materials and is prepared to rule on the Plaintiff's Complaint. In doing so, the Court will begin by setting forth the relative factual circumstances which gave rise to this matter.

On June 7, 2000, a decree of divorce was entered by the Wood County Court of Common Pleas terminating the marriage between the Plaintiff and the Debtor. For purposes of this case, the relevant terms of this decree of divorce are comprised of

three different components. First, the divorce decree allocated custody of the Parties' two minor children—ages seven and four—to the Plaintiff. As the noncustodial parent, the Debtor was ordered to pay child support in the amount of Seven Hundred Forty-five and 96/100 dollars ($745.96) per month. Second, the Parties' decree of divorce specifically provided that no spousal support was to be awarded to either party. Third, and at the heart of the instant matter, the Debtor was required to assume his portion of a joint marital debt, the obligation of which the Debtor now seeks to discharge through his bankruptcy case which was filed on November 21, 2000.

The circumstances surrounding this marital debt show that it was provided by the Plaintiff's parents and grandparents at the time of the Parties' divorce in order to enable the Parties to pay basic living expenses. On this basis, the Debtor, in the Parties' divorce decree, was ordered to pay to the Plaintiff, on or before July 1, 2000, his portion of this debt; for purposes of the Trial held in this matter, the amount of this debt was stipulated to be Three Thousand Five Hundred Fifty-five and 29/100 dollars ($3,555.29).[1] In return for paying this debt, the Plaintiff was required to hold the Debtor harmless on any liability that he may have had to the Plaintiff's parents and grandparents. The Debtor, however, has not made any payments toward this debt since the time of the Parties' divorce.

As it concerns the Debtor's ability to discharge his marital debt under the exceptions to nondischargeability contained in § 523(a)(15), the evidence in this case shows that the Debtor is presently employed at the Visteon Corporation. From this employment, the Debtor's monthly take home pay is Two Thousand Five Hundred Twenty-eight dollars ($2,528.00). At the time of the Trial held on this matter, the Debtor shared his living expenses with his girlfriend who has two children. With respect to the Debtor's expenses, the Debtor submitted to the Court the following itemized list:

| | |
|---|---|
| Rent | $ 272.95 |
| Utilities | $ 65.00 |
| Telephone | $ 20.00 |
| Cable | $ 20.00 |
| Food | $ 250.00 |
| Clothing | $ 175.00 |
| Transportation | $ 270.00 (includes $60.00 dollars per week in gas) |
| Entertainment | $ 150.00 |
| Renter's Insurance | $ 13.67 |
| Health Insurance | $ 14.00 |
| Rent Storage Space | $ 75.00 |
| Auto Payment | $ 420.00 |
| Cell Phone | $ 137.50 |
| Auto Repair | $ 120.00 |
| Child Support | $ 763.64 |
| Credit Cards | $ 250.00 |
| Total | $3,016.76 |

In terms of property, the evidence presented in this case shows that the Debtor

---

1. In addition, the Debtor was required to pay to the Plaintiff Three Hundred Fifty dollars ($350.00) for attorney fees. The Parties, however, have agreed that this debt is nondischargeable.

owns and insures three operable automobiles. No evidence on the actual value of these automobiles, however, was presented at the Trial.

With respect to the Plaintiff's financial situation, the evidence produced in this case revealed that the main source of the Plaintiff's income is derived from her employment as a Dental Assistant. In this regard, the Plaintiff testified that her take-home pay is approximately Two Thousand Two Hundred dollars ($2,200.00) per month. In addition, the evidence put forth in this case shows that the Plaintiff is entitled to receive Seven Hundred Sixty and 89/100 dollars ($760.89) per month in the form of child support. On the expense side of the equation, the Plaintiff's reasonable monthly expenses are just under Three Thousand dollars ($3,000.00). It was called to the Court's attention, however, that this figure does not include payment on a Sixteen Thousand dollar ($16,-000.00) unsecured debt.

## LEGAL DISCUSSION

At issue in this case is the dischargeability of a marital debt incurred during the course of a divorce. Pursuant to 28 U.S.C. § 157(b)(2)(I), this is a core proceeding over which this Court has the jurisdictional authority to enter final orders.

■ Under Chapter 7 of the Bankruptcy Code, generally those debts arising from a divorce or separation are not entitled to the benefits of a bankruptcy discharge. However, unlike support obligations, which are absolutely nondischargeable, Congress did provide that those debts relating to the division of a couple's marital property could be discharged under one of two circumstances: if the debtor did not have the ability to pay the marital debt; or if discharging the debt would result in a benefit to the debtor which would outweigh the detrimental consequences to the former spouse or child of the debtor. It is the Debtor's burden to establish, by a preponderance of the evidence, that at least one of these exceptions to nondischargeability exist. *Hart v. Molino (In re Molino),* 225 B.R. 904, 907 (6th Cir. BAP 1998). In this regard, the Court will first address whether, for purposes of § 523(a)(15)(A), the Debtor has the "ability to pay" his marital debt.

■ The "ability to pay" test of § 523(a)(15)(A) requires that the trier of fact ascertain the amount of income that the debtor has available that is not "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . ." This figure is otherwise known as a debtor's "disposable income." *Miller v. Miller (In re Miller),* 247 B.R. 412, 414 (Bankr.N.D.Ohio 2000). A debtor's disposable income is computed by first ascertaining the debtor's reasonable monthly expense. *Smith v. Shurelds (In re Shurelds),* 265 B.R. 891, 895–96 (Bankr.N.D.Ohio 2001). Such expenses are then set against the debtor's income which may, under appropriate circumstances, be imputed to the debtor if it is found that the debtor is not working up to his or her full earning potential. *See In re Molino,* 225 B.R. at 908; *Burton v. Burton (In re Burton),* 242 B.R. 674, 682 (Bankr. W.D.Mo.1999). Thereafter, if it is determined that the debtor does not have any disposable income available, or if the debtor's disposable income is insufficient to repay the marital debt in a reasonable amount of time, the debt may be discharged under § 523(a)(15)(A). *Bubp v. Romer (In re Romer),* 254 B.R. 207, 212 (Bankr.N.D.Ohio 2000).

■ In applying this test to the instant case, the Court, although not willing to impute to the Debtor any extra income,

finds that the Debtor's current monthly expenses of over Three Thousand dollars ($3,000.00) are grossly overstated given that the Debtor's net monthly income is just Two Thousand Five Hundred Twenty-eight dollars ($2,528.00). Along this same line, the Court does not find that the Debtor's expenses are reasonable for someone who claims that he cannot pay a marital debt of just over Three Thousand Five Hundred dollars ($3,500.00). For example, both a cell phone payment of One Hundred Thirty-seven and 50/100 dollars ($137.50) and a storage rental payment of Seventy-five dollars ($75.00) seem unnecessary given the particular circumstances of this case. The Court also questions why the Debtor needs to spend One Hundred Fifty dollars ($150.00) per month on clothing. Other expenses of the Debtor also seem high given his particular set of circumstances. Specifically, a Two Hundred Fourteen dollar (214.00) auto insurance payment and a Four Hundred Twenty dollar ($420.00) automobile payment do not seem to conform to the typical paradigm of a debtor who has the inability to pay his marital debts under § 523(a)(15)(A). Along this same line, the Court also questions why the Debtor is spending One Hundred Twenty dollars ($120.00) per month for auto repair expenses while at the same time spending Four Hundred Twenty dollars ($420.00) on an automobile payment. (i.e., a car requiring this large of a monthly payment should not be requiring such significant repairs.) In addition, and of particular importance, the Debtor's credit card payment of Two Hundred Fifty dollars ($250.00) seems rather imprudent given that the debtor has just recently received a bankruptcy discharge. Therefore, given these concerns, the Court declines to attach much evidentiary weight to the expense figures put forth by the Debtor. In addition, even if the Court were to set such concerns aside, an additional facet of this case makes it very difficult for the Court to give much credence to the Debtor's assertion that he cannot afford to pay his marital debt to the Plaintiff.

■ Under the "ability to pay" test of § 523(a)(15)(A), a court is not limited in its inquiry to solely the debtor's income. Instead, the specific language of § 523(a)(15)(A) permits a court to consider real or personal property held by a debtor that is "not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ..." In this regard, it is observed that the Debtor, while making payments on just one automobile, actually owns and operates three automobiles. Although not implying that the automobiles owned by the Debtor are significant in value, the Court finds this state of affairs very disconcerting. In particular, to permit a debtor the usage of three automobiles, while at the same time finding that he does not have the ability to pay a marital debt of just over Three Thousand Five Hundred dollars ($3,500.00), seems completely contrary to the purpose of § 523(a)(15)(A).

This concern is made even more acute by the fact that some of the Debtor's expenses seem directly related to the maintenance of his three automobiles. In particular, those expenses listed by the Debtor relating to auto insurance/repair, storage, and transportation all apparently take into account the Debtor maintaining more than one automobile. In this regard, it is not unreasonable to expect that the Debtor could realize a cost savings of at least One Hundred dollars ($100.00) per month if the Debtor were to sell two of his automobiles. This reduction in automobile expenses then, if devoted in full toward the repayment of the Debtor's marital debt, would pay off the obligation in a very reasonable period of three years. Additionally, this time period could be short-

ened even further if the Debtor were to apply the proceeds he receives from the sale of his automobiles directly to his marital debt.

Thus, for the above reasons, the Court is not of the persuasion that the Debtor is unable to pay his marital debt. Accordingly, the Debtor will not be permitted a discharge of his marital debt under the exception to nondischargeability contained in 11 U.S.C. § 523(a)(15)(A). The Court will thus now turn to address the Debtor's contention that he is entitled to a discharge under the other exception to nondischargeability contained in § 523(a)(15): the "Balancing Test" of paragraph (B).

■ Section 523(a)(15)(B), which is commonly referred to as the "Balancing Test," provides that a marital debt will be discharged if the benefit to the debtor in discharging such a debt outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. *See, e.g., Hart v. Molino*, 225 B.R. 904, 908–09 (6th Cir. BAP 1998). In conducting an analysis under this standard, this Court has applied what has become to be known as the "standard of living" test to determine if a debtor has met his or her burden under § 523(a)(15)(B). *Melton v. Melton (In re Melton)*, 238 B.R. 686, 695 (Bankr. N.D.Ohio 1999). Under this test, a court is to compare the parties' respective standards of living to determine if the debtor's standard of living will fall materially below that of the creditor's standard of living if the debt is not discharged. *In re Molino*, 225 B.R. at 908–09. Although many different factors are relevant in making such a determination, some of the most important considerations in this respect concern the parties' current income, expenses and available assets. *Id.* at 909.

■ In applying such considerations to the case at hand, the Court is not persuaded that the Debtor has sustained his bur-

den under § 523(a)(15)(B). This conclusion rests primarily on the same reasons already given by the Court concerning the Debtor's noncompliance with the "ability to pay" test of § 523(a)(15)(A). In particular, and as previously discussed, it is difficult for the Court to obtain a true picture of the Debtor's standard of living on account of the fact that the Debtor's *current* monthly expenses are clearly inflated. Similarly, it strains this Court's imagination as to how a person, who is able to own and operate three automobiles, could claim that their standard of living will fall materially below that of their former spouse when absolutely no evidence was produced that their former spouse is able to afford more than just basic living expenses. In fact, it is clear that, in addition to having very few assets, the Plaintiff is significantly behind on her financial obligations.

Furthermore, the Court observes that the Plaintiff is the residential parent of the Parties' two minor children. Also factoring into the Court's analysis is the small size of the Debtor's marital debt ($3,500.00) in comparison to the Forty-five Thousand dollars ($45,000.00) in other unsecured debt that the Debtor has been able to discharge in his bankruptcy case. *See Melton v. Melton (In re Melton)*, 238 B.R. 686 (Bankr.N.D.Ohio 1999) (holding that one factor to consider under § 523(a)(15)(B) is the amount of debt which has been or will be discharged in the debtor's bankruptcy). Accordingly, for all these reasons, the Court, in weighing the circumstances of this case, cannot find that the Debtor's benefit in receiving a bankruptcy discharge would outweigh the detrimental consequences such a discharge would have on the Plaintiff. Therefore, the Debtor will not be granted a discharge with respect to the Parties' marital debt under either paragraphs (A) or (B) of § 523(a)(15)(B).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the marital debt the Defendant/Debtor, David Calabrese, is required to pay to the Plaintiff, Lori Calabrese, pursuant to paragraph 23 of the Parties' Decree of Divorce (Case No. 99–DR–041, Wood County Common Pleas Court), be, and is hereby, determined to be a NONDISCHARGEABLE DEBT.